Robert A. Krause, WSB #5-2824
krause@spencelawyers.com
Mel C. Orchard, III, WSB #5-2984
orchard@spencelawyers.com
Elizabeth A. Richards, WSB #6-4249
richards@spencelawyers.com
THE SPENCE LAW FIRM, LLC
15 South Jackson Street
P.O. Box 548
Jackson, Wyoming 83001
(307) 733-7290 Telephone
(307) 733-5248 Fax

Attorneys for Plaintiffs



# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF WYOMING

| | |
|---|---|
| CHARLES B. FLICKINGER; BENJAMIN D. FLICKINGER; and CHARLES B. FLICKINGER as parent of A.R.F., his minor child,<br><br>Plaintiffs,<br><br>v.<br><br>FCA US, LLC, a Delaware limited liability company,<br><br>Defendant. | Civil No. 17-CV-126-J<br><br>**COMPLAINT & JURY DEMAND** |

Plaintiffs, by and through their attorneys, Robert A. Krause, Mel C. Orchard, III, and Elizabeth A. Richards, of The Spence Law Firm, LLC, plead and allege their causes of action against Defendant as follows:

## PARTIES

1. Plaintiff Charles Flickinger was seriously injured when the 1999 Jeep Grand Cherokee Limited (Jeep) in which he was a passenger rolled, and the Jeep's roof

collapsed and crushed him.

2. Charles Flickinger is, and has been at all times relevant to the facts alleged in this Complaint, a resident of Wyoming who is a citizen of Wyoming for the purpose of determining diversity.

3. Plaintiff Benjamin Flickinger was the driver of the Jeep at the time of the crash, and is the adult son of Charles Flickinger.

4. Benjamin Flickinger is, and has been at all times relevant to the facts alleged in this Complaint, a resident of Wyoming who is a citizen of Wyoming for the purpose of determining diversity.

5. Plaintiff A.R.F. was a passenger in the Jeep at the time of the crash, and is the minor child of Charles Flickinger.

6. A.R.F. is, and has been at all times relevant to the facts alleged in this Complaint, a resident of Wyoming who is a citizen of Wyoming for the purpose of determining diversity.

7. The Chrysler Corporation was founded in 1925.

8. In 1998, the company merged with German automaker Daimler-Benz AG to form the DaimlerChrysler Corporation.

9. In 2007, the company converted to a limited liability company, DaimlerChrysler Company, LLC, and then became Chrysler, LLC (Chrysler).

10. On April 30, 2009, Chrysler and certain of its affiliates filed a pre-packaged bankruptcy petition in the United States Bankruptcy Court for the Southern District of New York.

11. Chrysler became known as Old Carco, LLC (Old Carco).

12. On or about April 28, 2009, a new acquisition company, New CarCo Acquisition, LLC (New CarCo), was formed.

13. On April 30, 2009, New CarCo entered into a Master Transaction Agreement (MTA) under which it agreed to purchase substantially all of the assets of Chrysler/Old Carco and its affiliated debtors, and to assume certain liabilities.

14. The sale closed on June 10, 2009 (the Closing).

15. On or about June 10, 2009, New CarCo changed its name to Chrysler Group, LLC (Chrysler Group).

16. Under Amendment No. 4 of the MTA, Section 2.08(h), Chrysler Group assumed liability for claims arising from motor vehicle accidents occurring after the Closing, and involving a Jeep brand vehicle manufactured and sold prior to the Closing.

17. Specifically, Chrysler Group assumed liability for the following:

> (h) (i) all Product Liability Claims arising from the sale after the Closing of Products or Inventory manufactured by Sellers or the Subsidiaries in whole or in part prior to the Closing and (ii) all Product Liability Claims arising from the sale on or prior to the Closing of motor vehicles or component parts, in each case manufactured by Sellers or their Subsidiaries and distributed and sold as a Chrysler, Jeep or Dodge brand vehicle or MOPAR brand part, solely to the extent such Product Liability Claims (A) arise directly from motor vehicle accidents occurring on or after Closing, (B) are not barred by and statute of limitations, (C) are not claims including or related to any alleged exposure to any asbestos-containing material or any other Hazardous Material and (D) do not include any claim for exemplary or punitive damages.

18. The term "Product Liability Claim" is defined in the MTA as follows:

> "Product Liability Claim" means any Action arising out of, or otherwise relating to in any way in respect of claims for personal injury, wrongful death or property damage resulting from exposure to, or any other warranty claims, refunds, rebates, property damage, product recalls, defective material claims, merchandise returns and/or any similar claims,

or any other claim or cause of action, whether such claim is known or unknown or asserted or unasserted with respect to, Products or items purchased, sold, consigned, marketed, stored, delivered, distributed or transported by the Company Business, any Selling Group Member or any of its Subsidiaries, whether such claims or causes of action are known or unknown or asserted or unasserted.

19. In December 2014, Chrysler Group became defendant FCA US, LLC (FCA).

20. As set forth above, FCA assumed liability for the claims and damages alleged in this Complaint.

21. One or more of the pre-bankruptcy entities (Old Carco LLC, Chrysler LLC, DaimlerChrysler Company LLC, DaimlerChrysler Corporation, and/or Chrysler Corporation (hereafter and collectively "Old Chrysler")) designed, tested, manufactured, labeled, inspected, assembled, distributed, monitored, promoted, marketed and/or sold the Jeep Grand Cherokee model, including the Jeep involved in this case.

22. On information and belief, DaimlerChrysler Corporation manufactured the Jeep involved in this case.

23. FCA assumed liability for the acts and omissions of Old Chrysler related to the Jeep Grand Cherokee model, including the Jeep involved in this case, as alleged herein.

24. FCA is a Delaware limited liability company whose sole member is FCA North America Holdings, LLC. FCA North America Holdings, LLC, is a Delaware limited liability company whose sole member is Fiat Chrysler Automobiles N.V. Fiat Chrysler Automobiles N.V. is a publicly traded company incorporated under the laws of the Netherlands. Fiat Chrysler Automobiles N.V. is headquartered in London, England.

25. For purposes of determining diversity, FCA is a citizen of a foreign state. FCA is a citizen of the state in which its sole member, FCA North America Holdings, LLC, is a citizen. FCA North America Holdings, LLC, is a citizen of the state in which its sole member, Fiat Chrysler Automobiles N.V. is a citizen. Based on the above and 28 U.S.C. § 1332(c)(1), the citizenship of Fiat Chrysler Automobiles N.V. (and therefore the citizenship of FCA North America Holdings, LLC, and FCA) is its place of incorporation (the Netherlands) and its principal place of business (England/Great Britain).

26. FCA is not a citizen of Wyoming.

27. FCA's registered agent on file with the Wyoming Secretary of State is CT Corporation System, 1908 Thomes Ave., Cheyenne, Wyoming, 82001.

28. FCA is a company, and as such can only act through its agents, servants and/or employees and it is liable for the acts and omissions of its agents, servants and/or employees.

29. Because FCA assumed liability for the acts and omissions of Old Chrysler, as alleged herein, FCA is liable for the acts and omissions of the agents, servants and/or employees of Old Chrysler.

## JURISDICTION AND VENUE

30. Plaintiffs incorporate and adopt by reference all the facts and allegations above as though fully set forth herein.

31. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) because the suit is between citizens of a State and a citizen of a foreign

state, and the amount in controversy exceeds seventy-five thousand dollars ($75,000) exclusive of interest and costs.

32. Pursuant to 28 U.S.C. §1391, proper venue for this action is the United States District Court for the District of Wyoming because a substantial part of the events giving rise to the claim occurred within the District of Wyoming.

33. This Court has general personal jurisdiction over FCA because it conducts continuous and systematic business in Wyoming.

34. This Court has specific personal jurisdiction over FCA because FCA purposefully availed itself of the privilege of conducting activities in Wyoming, and Plaintiffs' damages arise out of or relate to those activities. FCA purposefully placed its vehicles into the stream of commerce within Wyoming and throughout the United States, and placed its vehicles into the stream of commerce with awareness that the product was being marketed in Wyoming.

35. Dealerships that sell and service FCA's products, including vehicles sold under the brand names Jeep, Chrysler, and Dodge, operate throughout Wyoming.

36. Charles Flickinger purchased the Jeep in Wyoming.

37. The crash and resulting injuries and damages occurred in Wyoming.

38. On information and belief, FCA derived significant revenue from the sale of vehicles in Wyoming.

39. On information and belief, FCA expected and/or reasonably should have expected the sale of its vehicles to have consequences in Wyoming.

40. FCA is registered with the Wyoming Secretary of State to do business in Wyoming.

41. Maintaining jurisdiction over FCA does not work a constitutionally prohibited hardship or a denial of Due Process.

## STATEMENT OF FACTS

42. Plaintiffs incorporate and adopt by reference all the facts and allegations above as though fully set forth herein.

43. On March 22, 2015, Benjamin Flickinger was driving the Jeep (V.I.N. 1J4GW68NXXC771925) north on U.S. Highway 20 in the Wind River Canyon in Fremont County, Wyoming.

44. The Jeep was designed, tested, and manufactured by Old Chrysler.

45. On information and belief, the Jeep was not altered or modified from its original design.

46. Charles Flickinger was wearing his seatbelt in the front passenger seat.

47. A.R.F. was also a passenger in the Jeep.

48. At about 10:00 p.m., a tire of the Jeep struck a rock that had fallen onto the road.

49. The rock catastrophically blew out the tire, causing the Jeep to swerve, roll over, and come to rest on its roof.

50. During the rollover, the roof structure, occupant restraint system, stability system, and/or occupant protection systems failed. Charles Flickinger experienced significant impacts with the roof and/or interior vehicle components, and suffered serious injuries.

51. Charles Flickinger had to be extricated from the vehicle by emergency responders.

52. He was transported via life flight from the scene of the crash to the Wyoming Medical Center in Casper, Wyoming, where he was treated emergently in the early morning hours of March 23.

53. Due to the severity of Charles Flickinger's cervical fractures and paralysis, the healthcare providers at the Wyoming Medical Center decided to transfer him by helicopter to Swedish Medical Center in Englewood, Colorado, for a higher level of care.

54. At about 5:40 a.m. on March 23, Charles Flickinger arrived in the emergency room at Swedish Medical Center, where he was treated for about two weeks before being transferred to Craig Hospital on April 6 for more intensive treatment and rehabilitation.

55. Charles Flickinger spent the next three months receiving inpatient care at Craig Hospital.

56. On July 7, he was discharged to outpatient care at Craig Hospital, where he continued to receive treatment for about another month until he was finally discharged home to Cody, Wyoming, where he continues to recover.

57. As a direct and proximate result of the acts and omissions alleged herein, Charles Flickinger sustained serious bodily and emotional injuries.

58. Charles Flickinger's physical injuries include, but are not limited to, the following:

   a. tetraplegia;

   b. cervical spine fractures;

   c. spinal cord injury; and

      d. closed head injury.

59. As a direct and proximate result of the acts and omissions alleged herein, Benjamin Flickinger and A.R.F. witnessed and/or perceived the serious crash, the immediate aftermath of the crash and the serious physical injuries suffered by their father, Charles Flickinger.

60. Benjamin Flickinger and A.R.F. observed and/or perceived the serious crash and the infliction of serious bodily harm, and/or observed the serious bodily harm shortly after its occurrence but without a material change in the condition and location of Charles Flickinger.

61. At the time Benjamin Flickinger and A.R.F. witnessed the event, each realized and/or perceived that the crash and the injuries of Charles Flickinger were serious.

### FIRST CAUSE OF ACTION
### PRODUCT LIABILITY- STRICT LIABILITY IN TORT

62. Plaintiffs incorporate and adopt by reference all the facts and allegations above as though fully set forth herein.

63. In the allegations that follow, the phrase "FCA (through Old Chrysler)" is used to denote FCA's assumption of Old Chrysler's liabilities in the bankruptcy proceedings, as set forth above.

64. At all times relevant to this Complaint, FCA (through Old Chrysler) was in the business of designing, testing, manufacturing, assembling, distributing, labeling, inspecting, monitoring, promoting, marketing, selling and/or placing into the stream of commerce its vehicles, including the Jeep involved in this case.

65. At the time the Jeep left the control of FCA (through Old Chrysler), it was in a defective condition and unreasonably dangerous to a person who might

reasonably be expected to use it.

66. The Jeep was defective and unreasonably dangerous when FCA (through Old Chrysler) placed it into the stream of commerce.

67. At the time of the incident giving rise to this action, Plaintiffs were using the Jeep in an intended, reasonable, and foreseeable manner and for its intended and reasonably foreseeable purpose.

68. On information and belief, the Jeep was intended to and did reach the owners and passengers without a substantial change in the condition in which it was sold.

69. FCA (through Old Chrysler) knew or should have known of the defective and/or unreasonably dangerous condition of the Jeep at the time it left FCA's (through Old Chrysler's) control, and of the substantial dangers involved in the reasonably foreseeable use of the Jeep.

70. FCA (through Old Chrysler) knew or should have known that ultimate users, operators, and/or consumers would not properly inspect the Jeep for defects and dangerous conditions, and that detection of such defects would be beyond the capabilities of such persons, including Plaintiffs.

71. The Jeep was not materially altered, modified, or damaged by Plaintiffs prior to the subject incident. At the time the Jeep left FCA's (through Old Chrysler's) control and entered the stream of commerce, it was unreasonably dangerous, defective, and unsafe for its intended use.

72. The design and structure of the Jeep include, but are not limited to, the following defects, which individually or in combination, proximately caused Plaintiffs' injuries and damages:

a. The design and structure was defective and unreasonably dangerous in that the roof or ceiling of the vehicle collapsed, tented, and/or became deformed during a foreseeable rollover incident sequence;

b. The roof structure of the vehicle was defective and unreasonably dangerous in that it provided no roof or ceiling support in the event of a foreseeable rollover incident sequence, and lacked adequate strength of roof material such that during a foreseeable rollover sequence, an occupant would be injured by the roof;

c. The Jeep was designed and equipped with a seatbelt system that failed to provide appropriate and necessary restraint during a foreseeable rollover sequence; and/or

d. The interior surfaces of the occupant space had inadequate padding.

73. The Jeep was further rendered unreasonably dangerous and defective for the following reasons:

a. The failure to equip the vehicle with a technologically feasible and available structure which would prevent the roof from collapsing during a foreseeable rollover sequence;

b. The failure to adequately test the vehicle before and during the design, manufacture, production, and sale of the vehicle to the public, and/or knowingly placing the dangerously designed and/or manufactured vehicle into the stream of commerce;

c. The failure to make the vehicle reasonably crashworthy;

11

    d. The failure to provide an adequate warning of the dangers of driving and/or riding in the vehicle with its defective design and/or manufacture as set forth above; and/or

    e. The failure to adequately monitor the performance of the vehicle and of prior model vehicles in the field to ensure that the vehicle and its components were safely designed and provided adequate protection in foreseeable rollover incident sequences.

74. FCA (through Old Chrysler) knew or should have known that safer alternative designs were available which would have prevented Plaintiffs' injuries and damages had they been utilized.

75. The Jeep caused physical harm to Charles Flickinger in that it failed to protect him from the impacts of the rollover. As a direct and proximate result of the Jeep's defective condition, Charles Flickinger was seriously injured, and Benjamin Flickinger and A.R.F. suffered emotional distress.

76. For these reasons, FCA (through Old Chrysler) is strictly liable in tort for the injuries suffered by Plaintiffs as set forth above, and for the damages more specifically detailed in the "Damages" section of this Complaint.

### SECOND CAUSE OF ACTION
### PRODUCT LIABILITY- NEGLIGENCE

77. Plaintiffs incorporate and adopt by reference all the facts and allegations above as though fully set forth herein.

78. At the time and place of the events described herein, FCA (through Old Chrysler) owed a duty of care to Plaintiffs to avoid causing them injury.

79. FCA (through Old Chrysler) was negligent in designing, manufacturing, assembling, inspecting, testing, labeling, marketing, distributing, monitoring, promoting, and/or selling the Jeep.

80. FCA (through Old Chrysler) breached its duty to Plaintiffs by placing the Jeep in the stream of commerce in an unreasonably dangerous, defective, and unsafe condition for its intended use, as explained above.

81. At the time and place of the vehicle's manufacture and of the events described herein, FCA (through Old Chrysler) breached the duty of care through, among other things, the following acts and omissions:

   a. Failing to equip the vehicle with a technologically feasible and available structure which would prevent the roof from collapsing during a foreseeable rollover sequence;

   b. Failing to adequately test the vehicle before and during the design, manufacture, production, and sale of the vehicle to the public, and/or knowingly placing the dangerously designed and/or manufactured vehicle into the stream of commerce;

   c. Failing to make the vehicle reasonably crashworthy;

   d. Failing to provide an adequate warning of the dangers of driving and/or riding in the vehicle with its defective design and/or manufacture as set forth above;

   e. Failing to adequately monitor the performance of the vehicle and of prior model vehicles in the field to ensure that the vehicle and its components were safely designed and provided adequate protection in foreseeable rollover incident sequences;

f. Failing to properly design, test and manufacture the Jeep and its component parts in a manner sufficient to protect the safety of vehicle occupants in the event of a crash; and

g. Failing to exercise reasonable care under the circumstances.

82. FCA's (through Old Chrysler's) negligent acts and omissions breached its duty to Plaintiffs, and directly and proximately caused their injuries, and the damages more specifically detailed in the "Damages" section of this Complaint.

### THIRD CAUSE OF ACTION
### LOSS OF PARENTAL CONSORTIUM

83. Plaintiffs incorporate and adopt by reference all the facts and allegations above as though fully set forth herein

84. At the time and place of the events described herein, FCA (through Old Chrysler) owed a duty of care to Charles Flickinger and his minor child, A.R.F., to avoid causing them injury.

85. The acts and omissions of FCA (through Old Chrysler) breached the duty of care it owed A.R.F.

86. Prior to the injuries sustained by Charles Flickinger, he was able to perform his duties as a father to his minor child, A.R.F., including but not limited to parental care, training, companionship, nurturing, guidance, supervisions, socialization, and other care, comfort and society.

87. As a direct and proximate result of the acts and omissions of FCA (through Old Chrysler), Charles Flickinger is unable to perform the work and services he customarily performed prior to his injuries as a parent in the care, comfort and society of his minor child, A.R.F. As a direct and proximate result of the acts and

omissions of FCA (through Old Chrysler), A.R.F. has been and will continue to be deprived of her father's care, comfort and society.

88. As a direct and proximate result of FCA's (through Old Chrysler's) acts and omissions, A.R.F. suffered the damages set forth above and in the "Damages" section of this Complaint.

## FOURTH CAUSE OF ACTION
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

89. Plaintiffs incorporate and adopt by reference all the facts and allegations above as though fully set forth herein.

90. At the time and the place of the events described herein, FCA (through Old Chrysler) owed a duty of care to Benjamin Flickinger and A.R.F. to avoid causing them injury.

91. Benjamin Flickinger and A.R.F. are within the class of persons entitled under Wyoming law to bring a claim for negligent infliction of emotional distress that is based upon the serious injuries suffered by their father, Charles Flickinger.

92. Charles Flickinger suffered serious bodily injury as that term is defined in the Wyoming Criminal Code.

93. Benjamin Flickinger and A.R.F. were with Charles Flickinger at the time of the crash and observed and/or perceived the infliction of serious injuries, or observed the serious injuries shortly after their occurrence, but without a material change in the condition and location of Charles Flickinger.

94. Benjamin Flickinger and A.R.F. realized at the time they witnessed the event that the injuries were serious.

95. Benjamin Flickinger and A.R.F. were involved in the crash, and witnessed the crash and its immediate aftermath, and suffered emotional distress as a result thereof.

96. As a direct and proximate result of FCA's (through Old Chrysler's) acts and omissions as alleged herein, Benjamin Flickinger and A.R.F. suffered emotional injuries as set forth above and in the "Damages" section of the Complaint.

## DAMAGES

97. Plaintiffs incorporate and adopt by reference all the facts and allegations above as though fully set forth herein.

98. As a direct result of FCA's (through Old Chrysler's) acts and omissions, as set forth in this Complaint, Charles Flickinger is entitled to be compensated and to recover the following damages:

   a. Past and future physical pain and suffering in an amount to be proven at trial;

   b. Past and future emotional pain and suffering in an amount to be proven at trial;

   c. Past and future loss of enjoyment of life in an amount to be proven at trial:

   d. Past and future loss of wages, income and earning capacity in an amount to be proven at trial;

   e. Other past and future pecuniary loss in an amount to be proven at trial;

   f. Past and future medical and related expenses in an amount to be proven at trial; and

   g. Costs of this action, and any other further relief allowed by law as this Court deems just and proper.

99. As a direct result of FCA's (through Old Chrysler's) acts and omissions, as set forth in this Complaint, A.R.F. is entitled to be compensated and to recover the following damages:

   a. Emotional distress damages in an amount to be proven at trial;

   b. Loss of consortium of her father, Charles Flickinger, in an amount to be proven at trial; and

   c. Costs of this action, and any other further relief allowed by law as this Court deems just and proper.

100. As a direct result of FCA's (through Old Chrysler's) acts and omissions, as set forth in this Complaint, Benjamin Flickinger is entitled to be compensated and to recover the following damages:

   a. Emotional distress damages in an amount to be proven at trial; and

   b. Costs of this action, and any other further relief allowed by law as this Court deems just and proper.

WHEREFORE, Plaintiffs request that this Court enter judgment against FCA in an amount supported by the allegations of this Complaint, as follows:

   1. Judgment against FCA for general damages in an amount consistent with the allegations contained herein and to be proved at trial;

   2. Judgment against FCA for special damages in an amount consistent with the allegations contained herein and to be proved at trial; and

   3. Judgment for costs, interest and such other and further relief as the Court deems just and equitable.

DATED this 19th day of July 2017.

                                                         /s/ Robert A. Krause

Robert A. Krause
Mel C. Orchard, III
Elizabeth A. Richards
THE SPENCE LAW FIRM, LLC
15 S. Jackson Street, P.O. Box 548
Jackson, Wyoming 83001
(307) 733-7290

Attorneys for Plaintiffs

## DEMAND FOR JURY TRIAL

Plaintiffs, by and through counsel and pursuant to Federal Rule of Civil Procedure 38, hereby request that this matter be tried to a jury of six and submit the requisite fee herewith.

DATED this 19th day of July 2017.

_____
Robert A. Krause